723 A.2d 1007 (1999)
Anthony LEONARD, Susan Cullen,[1] Plaintiffs,
and
Thomas Mann, Plaintiff-Appellant,
v.
METROPOLITAN LIFE INSURANCE COMPANY and Frank Iacone, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued December 14, 1998.
Decided February 22, 1999.
*1008 Mark Pfeffer, Atlantic City, for plaintiff-appellant (Goldenberg, Mackler & Sayegh, attorneys; Mr. Pfeffer, on the brief).
B. John Pendleton, Jr., Newark, for defendant-respondent Metropolitan Life Insurance Company (McCarter & English, attorneys; Mr. Pendleton, of counsel; Andrew O. Bunn & Kristin L. Wynne, Newark, on the brief).
Defendant-Respondent Frank Iacone did not file a brief.
Before Judges HAVEY, PAUL G. LEVY and LESEMANN.
The opinion of the court was delivered by HAVEY, P.J.A.D.
Plaintiff appeals from an order for summary judgment dismissing his suit against defendants alleging violations of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -42(LAD). Plaintiff contends that while he worked for defendant Metropolitan Life Insurance Company (Met Life), his supervisor, defendant Frank Iacone, subjected him to a hostile work environment because of his physical handicap, diabetes. He asserts that Met Life is liable for Iacone's conduct because it displayed willful indifference and/or actually participated in creating the hostile work environment.
In granting summary judgment to defendants, the motion judge concluded that plaintiff failed to satisfy the third prong of the test pronounced in Maher v. New Jersey Transit R.O., 125 N.J. 455, 480, 593 A.2d 750 (1991), which requires that a plaintiff alleging discriminatory harassment demonstrate he had been required to labor under conditions unreasonably different from his co-employees. We reverse.
Plaintiff worked for Met Life as an account representative for approximately nine months, between October 1994 and July 1995. He suffers from Type II insulin-dependent diabetes. He injects himself with insulin twice a day. If his blood sugar level drops, plaintiff feels shaky; he must then take some form of simple sugar into his system.
As an account representative, plaintiff was required to attend training meetings, office meetings and personnel conferences *1009 with the branch manager. The length of those meetings varied, but generally they lasted from twenty to forty-five minutes.
Plaintiff's discrimination claim is premised on two incidents during which Iacone, his supervisor, allegedly told plaintiff, through the use of expletives, that he could not miss a meeting in order to eat lunch despite his diabetic condition. The first incident occurred on Friday, December 2, 1994. Plaintiff was at his desk, speaking on the phone with his girlfriend, when Iacone approached him and told him it was time to go in for a meeting. Plaintiff's girlfriend overheard portions of the conversation, and plaintiff relayed the remainder to her in a phone call after the meeting. Neither plaintiff nor his girlfriend remembered the conversation word for word. However, all parties agree that plaintiff asked Iacone how long the meeting would take because he needed to eat lunch. Iacone replied, "so do I," to which plaintiff responded, "well, the difference is if I don't eat lunch I'm in a coma." After this exchange, plaintiff and Iacone went into the meeting. When they finished, Iacone said to plaintiff, "now get your diabetic ass out of here before you die in my office."
The second incident occurred on a Friday afternoon in January 1995. Plaintiff made a sales call and then stopped at his girlfriend's house in Moorestown for lunch. Because he was expected to return to the office for a training meeting, he phoned Iacone from his girlfriend's house to let him know he would be late for the meeting. Iacone told him he had to return immediately. Nevertheless, plaintiff remained at his girlfriend's house, ate lunch, and returned to the office, arriving approximately five minutes late for the meeting. Plaintiff claims that, after the meeting Iacone stated, "I don't give a f____ about you being diabetic and having low blood sugar.... We're going to do things my way or we're not going to do them." Iacone also asked plaintiff "who he was" to miss his meetings, and "f____ [you] being diabetic and having to stop for lunch."
Plaintiff admitted in his deposition that he knew of no rule or regulation preventing people from bringing food or beverages to the conference room where meetings were held. He also admitted that on occasions he had brought drinks to training meetings and, as far as he knew, he and other account representatives could bring something to eat to the meetings. He admitted that there was nothing preventing him from bringing his lunch into the individual meeting with Iacone on December 2, 1994. In February or March 1995, Iacone was transferred to a different Met Life branch. In July 1995, plaintiff resigned.
The motion judge considered plaintiff's claim to be one of discriminatory harassment. The Supreme Court in Maher, supra, 125 N.J. at 480-81, 593 A.2d 750, stated that:
The elements of a prima facie case of discriminatory harassment, transfer, or discharge are that (1) the complainant was handicapped within the meaning of the law; (2) the complainant had been performing his or her work at a level that met the employer's legitimate expectations; (3) the complainant nevertheless had been required to labor under conditions that were unreasonably different from those of other employees, had been transferred, or had been fired; and (in the case of discriminatory transfer or discharge) (4) the employer had sought another to perform the same work after complainant had been removed from the position.
As noted, the motion judge concluded that plaintiff failed to satisfy the third prong of the test pronounced in Maher, supra, 125 N.J. at 480-81, 593 A.2d 750, which requires a plaintiff alleging discriminatory harassment to demonstrate that he or she had been required to labor under conditions unreasonably different from his co-employees. The motion judge observed:
There is just absolutely no evidence to establish either that other non-diabetic employees were permitted to miss or be late for meetings to allow them to eat lunch. And in this respect, the [p]laintiff Mann was not treated differently from any of the other employees.
The judge also noted that there was uncontradicted evidence that plaintiff and others could bring food and drink to meetings. Thus, given the absence of evidence that plaintiff had been required to labor under *1010 unreasonably different conditions, the judge held:
The defendant has met its obligation to treat the plaintiff Mann as it treats its other employees, and further, to the extent that Mann was able to take food to meetings, [defendant] made reasonable accommodations to the extent that the equal treatment adversely affected him.
In Maher, the plaintiff alleged "harassment, suspension and subsequent discharge" by his employer, New Jersey Transit, because New Jersey Transit refused to allow him to return to work without wearing safety glasses after his bout with chemical conjunctivitis. Maher, supra, 125 N.J. at 479, 593 A.2d 750. The Court held that plaintiff's claim of harassment and discriminatory discharge was a "minor dispute" covered by the parties' collective bargaining agreement and thus was preempted by the Federal Railroad Labor Act, 45 U.S.C.A. §§ 151-188. Id. at 480, 593 A.2d 750. It was therefore not required to apply the cited four-prong test to the facts of the case.
Maher cites Jansen v. Food Circus Supermarkets, Inc., 110 N.J. 363, 382, 541 A.2d 682 (1988), as the genesis of the four-prong test for discriminatory harassment or discharge. In Jansen, the issue was whether the nature and extent of plaintiff's handicap, epilepsy, reasonably precluded the performance of his employment as a meat cutter. Id. at 376-79, 541 A.2d 682; see also N.J.S.A. 10:5-4.1. The inquiry was whether the defendant employer's decision to terminate plaintiff was based upon "`an objective standard supported by factual or scientifically validated evidence, rather than on the basis of general assumptions that a particular handicap would create a hazard to the safety or health of such individual, other employees, clients or customers.'" Jansen, supra, 110 N.J. at 378, 541 A.2d 682 (quoting N.J.A.C. 13:13-2). Jansen held that the elements of a prima facie case of discriminatory discharge are:
"(1) that he was [handicapped within the meaning of the law], (2) that he was performing his job at a level that met his employer's legitimate expectations, (3) that he nevertheless was fired, and (4) that the [employer] sought someone to perform the same work after he left."
[Id. at 382, 541 A.2d 682 (quoting Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 597, 538 A.2d 794 (1988)) (quoting Loeb v. Textron, Inc., 600 F.2d 1003, 1014 (1st Cir.1979)).]
As far as we can tell, Maher has never been applied to a hostile work environment claim; its application has been limited to those cases in which the plaintiff sets forth a claim of discriminatory discharge. See Catalane v. Gilian Inst. Corp., 271 N.J.Super. 476, 496, 638 A.2d 1341 (App.Div.) (applying prima facie elements listed in Maher to plaintiff's claim that he was discharged because of his age in violation of the LAD), certif. denied, 136 N.J. 298, 642 A.2d 1006 (1994); Seiden v. Marina Assocs., 315 N.J.Super. 451, 459, 718 A.2d 1230 (Law Div.1998) (holding that handicapped plaintiff discharged after employer refused to reasonably accommodate him, was not required to fulfill fourth element of McDonnell Douglas[2] Maher v. New Jersey Transit test); Morris v. Siemens Components, Inc., 928 F.Supp. 486, 495 (D.N.J.1996) (applying prima facie elements listed in Maher to plaintiff's claim that she was discharged because she indicated an intention to file a workers' compensation claim); Kube v. New Penn Motor Express, Inc., 865 F.Supp. 221, 228 (D.N.J.1994) (applying Maher's prima facie elements to plaintiff's claim that his employer violated the LAD when it refused to reinstate him after a back injury which limited his ability to lift).
Plaintiff's complaint charges defendants with subjecting him to a hostile work environment because of his diabetes, rather than claiming discriminatory harassment, transfer or discharge. The complaint alleges that "[a]t all times relevant herein, defendant [Iacone] subjected plaintiff Thomas Mann to a hostile work environment because of his disability." Our Supreme Court has recognized a hostile work environment claim in the context of other forms of discrimination. In Lehmann v. Toys `R' Us, Inc., 132 N.J. 587, 603-04, 626 A.2d 445 (1993), the Court formulated the standard for a claim of hostile *1011 work environment sexual harassment as follows:
To state a claim for hostile work environment sexual harassment, a female plaintiff must allege conduct that occurred because of her sex and that a reasonable woman would consider sufficiently severe or pervasive to alter the conditions of employment and create an intimidating, hostile, or offensive working environment.
This framework is now "the basic standard for determining whether acts of harassment in the workplace constitute invidious discrimination in violation of the LAD." Taylor v. Metzger, 152 N.J. 490, 498, 706 A.2d 685 (1998) (applying Lehmann framework to African-American's claim of racial harassment under the LAD).
Accordingly, to sustain a claim of hostile work environment based on disability, as here, a plaintiff must establish that the conduct complained of would not have occurred but for his or her handicap, and that it was severe and pervasive enough to make a reasonable person in the employee's shoes believe that the conditions of employment had been altered and the working environment had become hostile and abusive. See Ditzel v. University of Med. & Dentistry of New Jersey, 962 F.Supp. 595, 603 (D.N.J.1997) (applying the Lehmann criteria to plaintiff's claim of hostile work environment based on handicap harassment). Since the gravamen of plaintiff's complaint is that defendants created a hostile work environment, we must consider the claim in the context of these criteria.
The motion judge's emphasis on the physical conditions of plaintiff's employment was misplaced. It is the harasser's conduct, in this case Iacone's statements to, or treatment of plaintiff, that should have been the focus of the motion judge's inquiry in the context of the factors enunciated by Lehmann and Taylor. The issue is whether a rational fact finder could determine that Iacone's conduct occurred because of plaintiff's diabetes and that a reasonable diabetic would consider the conduct "sufficiently severe or pervasive to alter the conditions of employment and create an intimidating, hostile, or offensive working environment." Lehmann, supra, 132 N.J. at 603-04, 626 A.2d 445; Taylor, supra, 152 N.J. at 498, 500, 706 A.2d 685.
We are satisfied that the evidential materials presented, when viewed in a light most favorable to plaintiff, Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 666 A.2d 146 (1995), were sufficient to permit a rational fact finder to resolve the disputed issues in his favor. It is clear that Iacone's conduct was directed to plaintiff's disability. His comments and the expletives he used directly referenced plaintiff's diabetes and his perception that plaintiff was looking for special treatment because of that condition. We reject defendant's assertion that the two isolated derogatory comments in question are insufficient to support a cause of action under the LAD. Even a single derogatory remark may be sufficiently severe to produce a hostile work environment. Taylor, supra, 152 N.J. at 500, 706 A.2d 685. In our view, a rational fact finder could conclude that Iacone's comments were severe enough to make a reasonable diabetic believe that the working environment was hostile or abusive. Id. at 498, 706 A.2d 685. While the comments were not racial slurs, as in Taylor, they could be construed as demeaning plaintiff because of his physical condition and ridiculing his health concerns[3] and fear of death associated with that condition.
Further, the severity of the remarks was underscored by the fact that they were uttered by plaintiff's supervisor, who has a unique role "in shaping the work environment" and preventing and rectifying invidious *1012 harassment in the work place. Id. at 503, 706 A.2d 685. Because Iacone was, according to plaintiff's complaint, both plaintiff's superior and the offender, plaintiff could not seek the redress that would otherwise be available to a victim of workplace harassment, namely resort to his own supervisor. Id. at 505, 706 A.2d 685. In short, we conclude that plaintiff has presented adequate evidence of the severity of Iacone's remarks to create a genuine issue of material fact sufficient to survive defendants' motion for summary judgment. We accordingly reverse the order for summary judgment and remand for further proceedings.
Reversed and remanded for further proceedings.
NOTES
[1] Plaintiffs Anthony Leonard and Susan Cullen are not parties to the present appeal. Leonard and Cullen asserted unrelated claims of hostile work environment and sexual harassment against defendants. Defendants moved for summary judgment against all three plaintiffs. Defendants' motion was granted only as to plaintiff Mann, and denied as to Leonard and Cullen. Because the summary judgment against plaintiff was not final as to all issues and all parties, plaintiff had no appeal as of right pursuant to R. 2:2-3(a). However, we now treat plaintiff's notice of appeal as an application for leave to appeal and grant leave nunc pro tunc. See R. 2:4-4(b)(2).
[2] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
[3] Defendants argue that plaintiff was bound by the statement of facts submitted by them on the summary judgment motion. See R. 4:46-2(a). This is so, defendants argue, because plaintiff did not "elaborate" on the facts presented by defendants by including the purported expletives and statements used by Iacone. See R. 4:46-2(b). However, the record reveals that plaintiff's deposition, which includes the statements and expletives used by Iacone, was submitted to the motion judge. Further, during argument on the motion, plaintiff's counsel made reference to Iacone's statements in arguing that genuine fact issues existed concerning the hostile work environment claim. We therefore have considered the entire record presented to the motion judge.