787 A.2d 228 (2001)
346 N.J. Super. 150
Deborah FLIZACK, Plaintiff-Appellant,
v.
GOOD NEWS HOME FOR WOMEN, INC. and Ernestine Winfrey, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued November 28, 2001.
Decided December 26, 2001.
*230 Elizabeth Zuckerman, Lawrenceville, argued the cause for appellant (Zuckerman & Fisher, attorneys; Ms. Zuckerman, on the brief).
Charles Z. Schalk, Somerville, argued the cause for respondents (Mauro, Savo, Camerino & Grant, attorneys; Mr. Schalk, of counsel and on the brief).
Before Judges BAIME, NEWMAN, and FALL[1].
*229 The opinion of the court was delivered by BAIME, P.J.A.D.
Plaintiff appeals from a summary judgment, dismissing her claims against defendants for violations of the Law Against Discrimination (N.J.S.A. 10:5-1 to-42) (LAD), intentional infliction of emotional distress, and breach of contract. She contends that her supervisor's racially charged comment and sexual misconduct created a hostile work environment and caused her severe mental anguish. She also claims that her employer violated provisions contained in its employment manual promising that it would not discriminate on the basis of race or gender. While we find that the contract claim was properly dismissed, we are satisfied that plaintiff's documentary submissions established a prima facie case of sexual harassment, racial discrimination, and intentional infliction of emotional distress.

I.
Because this case was decided by summary judgment, we view the evidence presented in a light most favorable to plaintiff. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 *231 (1995). The evidence assessed under that standard discloses the following facts.
Plaintiff was employed by defendant Good News Home for Women, Inc. (GNH) as a night monitor. GNH is a residential drug and alcohol treatment center for adult women. All of GNH's employees are women. Defendant Ernestine Winfrey is the director of GNH, and was plaintiff's supervisor. Plaintiff is white. Winfrey is African-American.
Following an acrimonious staff meeting, Winfrey approached plaintiff, forcing her to back into a table. Touching plaintiff with the front of her body, Winfrey exclaimed, "Are you still pissed at me ... [b]ecause if you are I am going to have to stare in them big blue eyes and pat those white titties." Simultaneously, Winfrey stroked plaintiff's breast in a sexual manner. When plaintiff attempted to flee, Winfrey embraced her, again in a sexual manner. Plaintiff was able to escape to the parking lot. Winfrey pursued her, placing her arm around plaintiff's neck and shoulder and "cuddl[ing]" her while attempting to usher her back into the building. Although Winfrey denied that she touched plaintiff in an inappropriate manner, the episode was witnessed by several individuals who corroborated plaintiff's account.
The incident was brought to the attention of GNH's board of directors. A meeting was conducted at which GNH's president of the Board, Jack Welsh, presided. According to Mary Beth Bubert, a board member, Winfrey did not deny plaintiff's allegations, but attempted to "soft-pedal" the incident. Welsh apparently concluded that plaintiff was a "disgruntled" employee who was either "imagining" the incident or "exaggerating" its significance. Bubert expressed the view that Winfrey should have been "monitored and disciplined." Ultimately, Bubert resigned from the board because she did not believe that Welsh considered the incident as "serious[ ]" and disagreed with his position.
On August 28, 1997, Welsh wrote to Winfrey, admonishing her for using "inappropriate" language. Welsh observed in the letter that "there is no place in our business for offensive or vulgar comments including `street' colloquialisms or unwanted physical contact." On the same day, Welsh wrote to plaintiff, advising her that Winfrey had been "warned in writing" that "further violations may result in disciplinary actions."
Welsh expected plaintiff to return to work. However, she was unable to do so. It is undisputed that plaintiff suffered severe stress and emotional turmoil as a result of the incident. We need not describe here the extent of plaintiff's disability. Suffice it to say that it was substantial and wholly uncontested.
The judge granted defendants' motion for summary judgment. In dismissing plaintiff's LAD claims, the judge found no evidence indicating that Winfrey's conduct was "gender" or "racially" motivated. The judge concluded as a matter of law that plaintiff failed to establish discriminatory conduct based on sex or color. Although defendants had never contested the severity of plaintiff's mental anguish caused by the incident, the judge found that no evidence had been presented on the subject and dismissed plaintiff's action for intentional infliction of emotional distress on that basis. As to plaintiff's claim for breach of contract, the judge found no promise in GNH's employment manual that had been violated.

II.
We first consider plaintiff's claims of sexual harassment and racial discrimination. *232 The applicable principles are well settled.
We begin with a point that has not been directly raised. While female complaints of discrimination based on gender are not at all unusual, see, e.g., Lehmann v. Toys `R' Us, Inc., 132 N.J. 587, 626 A.2d 445 (1993), claims of sexual harassment where the harasser and the harassed employee are of the same sex are of the same sex are somewhat atypical. In Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), the United States Supreme Court held that Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e-2(a)(1), protected a male plaintiff whose harasser was of the same sex in an all-male workplace. The Court observed, "`[b]ecause of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group.'" Id. at 78, 118 S.Ct. at 1001, 140 L.Ed.2d at 206 (quoting Castaneda v. Partida, 430 U.S. 482, 499, 97 S.Ct. 1272, 1282, 51 L.Ed.2d 498, 513 (1977)). Our Supreme Court has expressed similar sentiments, noting that the LAD prohibits "sexual harassment of women by men, men by women, men by men, and women by women," and that the statutory scheme "bars both heterosexual and homosexual harassment." Lehmann v. Toys `R' Us, Inc., 132 N.J. at 604, 626 A.2d 445. We will return to this subject shortly.
In a similar vein, claims of racial discrimination by white persons against African-Americans have been termed "reverse discrimination" and are somewhat unusual. Generally, an employee alleging such reverse discrimination is required to show some reason to believe his employer is the "`unusual employer who discriminates against the majority.'" Oakley v. Wianecki, 345 N.J.Super. 194, 201, 784 A.2d 727 (App.Div.2001) (quoting Erickson v. Marsh & McLennan Co., 117 N.J. 539, 551, 569 A.2d 793 (1990)). Because the issue was not raised, the evidence presented to the Law Division on the subject is somewhat skimpy and equivocal. However, the record does include evidence of unrelated incidents in which Winfrey's conduct and comments may be said to have disclosed a divisive "black against white" view of the world. In any event, the issue has neither been briefed nor argued, and we thus have no occasion to further address this point.
In Lehmann v. Toys `R' Us, Inc., 132 N.J. at 603-04, 626 A.2d 445, our Supreme Court articulated the elements which must be demonstrated by one claiming a violation of LAD based on a hostile work environment. Paraphrasing that test to reflect plaintiff's claims of discrimination here, one making such a claim must show:
(1) the conduct complained of would not have occurred but for the employee's protected trait (white woman);
(2) the conduct was severe or pervasive enough to make a
(3) reasonable person of the same protected trait believe that
(4) the conditions of employment and the working environment have been altered and the working environment has become hostile or abusive.
Ibid.
For the purpose of clarity, we consider these elements in a different order than that set forth in the Lehmann opinion. We first examine whether Winfrey's conduct was "severe or pervasive."
In Lehmann, the Court noted the possibility that a single act of discrimination or offensive conduct could, under certain conditions, create a hostile work environment. Lehmann v. Toys `R' Us, Inc., 132 N.J. at *233 606-07, 626 A.2d 445. However, said the Court, "it will be a rare and extreme case in which a single incident will be so severe that it would, from the perspective of a reasonable woman, make the working environment hostile,...." Ibid.
The question was more recently addressed in Taylor v. Metzger, 152 N.J. 490, 706 A.2d 685 (1998). There, the plaintiff's supervisor referred to her as a "jungle bunny." Id. at 495, 706 A.2d 685. Citing out-of-state authorities, the Court held that the single utterance of the racial epithet was so egregious as to be actionable under the LAD. Id. at 502, 706 A.2d 685. The Court noted that "the severity of the remark ... was exacerbated by the fact that it was uttered by a supervisor." Id. at 503, 706 A.2d 685. The Court reasoned that "[a] supervisor has a unique role in shaping the work environment," and that "[p]art of a supervisor's responsibilities is the duty to prevent, avoid and rectify invidious harassment in the workplace." Ibid.
Against this backdrop, we are persuaded that a jury could reasonably find Winfrey's conduct was so "severe" as to support a claim of racial discrimination and sexual harassment. As in Taylor, Winfrey did more than merely allow racial and gender harassment at the workplace; she perpetrated it. While the phrase uttered by Winfrey in this case is by no means as racially charged as that uttered in Taylor, it was accompanied by sexual misconduct and behavior that gave it a stark racist and sexual meaning immeasurably increasing its severity. This single incident of racial and sexual harassment by one of the highest-ranking employees of GNH could reasonably be "found `sufficiently severe [as] to alter the conditions of employment and ... create an abusive or hostile work environment.'" Id. at 504, 706 A.2d 685 (quoting Nadeau v. Rainbow Rugs, Inc., 675 A.2d 973, 974 (Me.1996)); see also Leonard v. Metropolitan Life Ins. Co., 318 N.J.Super. 337, 345, 723 A.2d 1007 (App.Div.1999) ("the severity of the remarks was underscored by the fact that they were uttered by plaintiff's supervisor"); DeCapua v. Bell Atl.-N.J., Inc., 313 N.J.Super. 110, 124, 712 A.2d 725 (Law Div.1998) (supervisor's reference to plaintiff as "white boy" was sufficient to withstand motion for summary judgment). In reaching this conclusion, we recognize that offensive, crude or inappropriate comments are not automatically discriminatory because the words used are tinged with racial stereotypes or sexual connotations. See Reyes v. McDonald Pontiac-GMC Truck, Inc., 997 F.Supp. 614, 617 (D.N.J. 1998) (references to plaintiff as a "bitch" and "Queen Bee" were not actionable). However, viewing the evidence in plaintiff's favor, we conclude that the single incident alleged was sufficiently egregious as to withstand defendants' motion for summary judgment.
We next focus on whether the conduct complained of would not have occurred but for the employee's protected trait ("white woman"). Lehmann v. Toys `R' Us, Inc., 132 N.J. at 603, 626 A.2d 445. This element "is discrete from the others." Id. at 604, 626 A.2d 445. "It simply requires that in order to state a claim under the LAD, a plaintiff must show by a preponderance of the evidence that she suffered sexual discrimination because of her sex." Ibid. As to plaintiff's claim of racial discrimination, plaintiff was obliged to prove that she suffered racial discrimination because of her race. "Common sense dictates that there is no LAD violation if the same conduct would have occurred regardless of the plaintiff's [gender or race]." Ibid.
So posited, we are satisfied that plaintiff sustained her burden of establishing *234 the causal connection between her gender and the harassment committed by Winfrey. We reject defendants' argument that plaintiff failed to establish this element. While acknowledging that the LAD prohibits sexual harassment by a defendant who is of the same sex as the victim, defendants assert that because Winfrey was not a homosexual, her conduct toward plaintiff cannot, as a matter of law, be considered gender-based. Stripped to its essentials, defendants' contention rests on the thesis that a sexual harassment suit filed by a victim who is of the same gender as the defendant requires that the defendant be an avowed homosexual. In advancing this argument, defendants confuse sex with sexual gratification. A claim for sexual harassment does not require that the defendant be motivated by the desire for sexual gratification. Rather, the requisite causal connection is satisfied if the offensive act would not have occurred but for the victim's gender. Thus, as set forth in Lehmann, "[w]hen the harassing conduct is sexual or sexist in nature, the but-for element will automatically be satisfied." Id. at 605, 626 A.2d 445. When, as here, "a plaintiff alleges that she has been subjected to sexual touching or comments ..., she has established that the harassment occurred because of her sex." Ibid. That principle is fully applicable here.
More troublesome is the question whether plaintiff established that discrimination or harassment occurred by reason of her race. We are satisfied that Winfrey's injection of race into her comments relating to plaintiff's breasts was sufficient to satisfy this causal element. All that is required is a showing that it is more likely than not that the harassment occurred because of plaintiff's race. That minimal showing was made here.

III.
We also conclude that the judge was mistaken in dismissing plaintiff's claim for intentional infliction of emotional distress. In order to sustain her claim, it was incumbent on plaintiff to establish "intentional and outrageous conduct by the defendant, proximate cause, and distress that [was] severe." Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 366, 544 A.2d 857 (1988).
The defendant's conduct must be "`so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Ibid. (quoting Restatement (Second) of Torts, § 46 comment d (1965)). "`[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities'" are insufficient. 49 Prospect St. Tenants Ass'n v. Sheva Gardens, Inc., 227 N.J.Super. 449, 472, 547 A.2d 1134 (App.Div.1988) (quoting Restatement (Second) of Torts § 46, comment d (1965)). While "a single racial slur spoken by a stranger on the street" may not "amount to extreme and outrageous conduct," Taylor v. Metzger, 152 N.J. at 511, 706 A.2d 685, "`[t]he employer-employee relationship has been regarded as a special relationship which is a factor to be considered in determining whether liability should be imposed.'" Ibid. (quoting J.D. Lee & Barry Lindahl, 3 Modern Tort Law: Liability and Litigation § 32.03 at 133-34 (rev.ed.1990)). "`A single event, under the right circumstances, may be extreme and outrageous.'" Taylor v. Metzger, 152 N.J. at 512, 706 A.2d 685 (quoting Wilson v. Kiss, 751 F.Supp. 1249, 1254 (E.D.Mich.1990)).
While defendant in this case did not unleash a barrage of epithets toward plaintiff, we are convinced that a jury could reasonably find her conduct was extreme *235 and outrageous. The racial and sexual character of Winfrey's comment, coupled with her highly inappropriate sexual misbehavior, might reasonably be found by a jury to be so egregious as to be actionable.
Plaintiff was also bound to prove that Winfrey acted intentionally or recklessly. Taylor v. Metzger, 152 N.J. at 513, 706 A.2d 685. Undoubtedly, Winfrey's remarks and accompanying sexual misconduct were intentional because she intended to say what she did in fact say, and she intended to do that which she in fact did. Moreover, Winfrey's intent to cause emotional distress can be inferred from her remarks and her behavior. Id. at 513, 706 A.2d 685. We note in that respect that plaintiff had been sexually abused as a child, and that fact was known by Winfrey at the time of the incident in question. Winfrey clearly had reason to know that plaintiff was a fragile vessel and that offensive sexual comments and behavior could be particularly damaging. It can thus be inferred that she intended to cause plaintiff harm.
Finally, it was incumbent upon plaintiff to prove that "the emotional distress suffered by [her was] `so severe that no reasonable [person] could be expected to endure it.'" Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. at 366, 544 A.2d 857 (quoting Restatement (Second) of Torts § 46 comment j (1965)). As we noted earlier, although defendant did not contest the presence of this element, the judge predicated the dismissal of plaintiff's claim on the failure to produce evidence on the subject. In her brief, plaintiff refers to deposition excerpts that were not presented to the judge because defendants never questioned the severity of the emotional distress resulting from the incident. Although plaintiff should have moved before us to supplement the record, defendants have not objected to our consideration of this evidence. We are entirely satisfied that plaintiff suffered severe emotional distress.
It is undisputed that plaintiff began visiting a psychologist shortly after the incident. The psychologist reported that plaintiff appeared "very stressed" and that this condition was causally related to Winfrey's misconduct. Among other symptoms, plaintiff suffered from nightmares, inability to sleep, and episodes of bed wetting. Her relationship with others deteriorated. Close friends observed that she changed dramatically after the incident, becoming depressed, withdrawn and moody. Plaintiff's inability to work resulted in bankruptcy.
Although a claimant "cannot recover for idiosyncratic emotional distress that would not be experienced by average persons," Taylor v. Metzger, 152 N.J. at 516, 706 A.2d 685, we cannot fairly say that plaintiff's reaction was not such as to satisfy this objective standard. In our view, a rational fact finder could reasonably conclude that defendant's conduct would have caused severe emotional distress in a person in plaintiff's situation. See Savage v. Old Bridge-Sayreville Med. Group, P.A., 134 N.J. 241, 250, 633 A.2d 514 (1993) (applying "reasonable person in plaintiff's position" standard in medical malpractice case); Berrie v. Toyota Motor Sales, USA, Inc., 267 N.J.Super. 152, 157, 630 A.2d 1180 (App.Div.1993) (using "reasonable person in plaintiff's position" standard in Lemon Law case).

IV.
We find no sound basis to vitiate that portion of the summary judgment order that dismissed plaintiff's claim for breach of contract. The employment manual upon which plaintiff rested her claim is not in the record before us. Apparently, the manual contained a statement that GNH would promote its employees based on their qualifications without regard to *236 race, color, sex, age, veteran status or physical handicap.
We do not regard this general, cryptic company credo as an enforceable contract. See Witkowski v. Thomas J. Lipton, Inc., 136 N.J. 385, 388, 643 A.2d 546 (1994); Woolley v. Hoffmann-LaRoche, Inc., 99 N.J. 284, 285-86, 491 A.2d 1257, modified, 101 N.J. 10, 499 A.2d 515 (1985). The credo did not contain the level of detail that one might reasonably expect in a binding contract. See Tripodi v. Johnson & Johnson, 877 F.Supp. 233, 240 (D.N.J. 1995) (company credo did not constitute binding contract); Kane v. Milikowsky, 224 N.J.Super. 613, 616, 541 A.2d 233 (App.Div.1988) (memoranda "do not purport to cover comprehensively the subject of termination").
Accordingly, the order granting defendants' motion for summary judgment is affirmed in part and reversed in part. The matter is remanded to the Law Division for a plenary trial on plaintiff's causes of action for violations of the LAD and intentional infliction of emotional distress.
NOTES
[1] Judge Fall did not participate in oral argument. However, the parties consented to his participation in the decision subsequent to argument.