**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4036-17T1

JOSEPH IKO,

     Plaintiff-Respondent,

v.

COUNTY OF MIDDLESEX,

     Defendant-Appellant.

_____

Submitted May 13, 2019 – Decided June 20, 2019

Before Judges Sabatino, Sumners and Mitterhoff.

On appeal from Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-1407-15.

Dvorak & Associates LLC, attorneys for appellant (Lori A. Dvorak and Danielle Abouzeid, of counsel and on the briefs).

Castronovo & McKinney, LLC, attorneys for respondent (Paul R. Castronovo, of counsel and on the brief; Megan Frese Porio, on the brief).

PER CURIAM

Defendant County of Middlesex appeals from the trial court's denial of its motion for a new trial after a jury rendered a verdict in plaintiff Joseph Iko's favor. Plaintiff brought the action pursuant to the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 to -42, alleging that he endured eleven years of harassment at his workplace, the Middlesex County Sheriff's Department ("Department" or "Sheriff's Department"), based on his undisputed disability as a Type I diabetic. At trial, there was overwhelming testimony from plaintiff's coworkers corroborating plaintiff's claims that he was the subject of frequent verbal taunts regarding his diabetes and related medical problems. On appeal, defendant contends the trial court abused its discretion in its disposition of two in limine motions, and that those errors necessitate a new trial. Defendant also asserts that the trial court should have granted its motion to dismiss at the close of plaintiff's case-in-chief based on the lack of expert testimony linking his eyesight problems, a pancreas transplant, and an aortic tear to his diabetes. Having reviewed the record in light of the governing legal principles, we reject defendant's arguments and affirm.

A-4036-17T1

Background

Plaintiff has been diagnosed with Type I diabetes since he was six years old.

In August 1992, plaintiff began his employment with the Sheriff's Department.[1] He worked with the Department until his retirement on August 1, 2017.

In 2004, plaintiff underwent a pancreas transplant because of his diabetes. When plaintiff returned to work after the transplant, his high-level supervisors and coworkers began harassing him by regularly calling him names such as "Half-Dead," "Mr. Magoo," "Stevie Wonder," "Jerry's Kids," "Chinaman," and "Walking Dead." Plaintiff's then-supervisor Captain James Rizzi[2] called plaintiff "Half-Dead" "[s]o many times I can't even count." In addition, Lieutenant Tom Farrell,[3] Captain Rizzi and several of plaintiff's coworkers

---

[1] Plaintiff started as an officer and became an investigator in 1995.

[2] The harassment began when Rizzi was a Sergeant. Rizzi was promoted to Lieutenant in or around 2011 and to Captain in or around November 2014.

[3] The harassment began when Farrell was a Sergeant. Farrell was promoted to Lieutenant in or around 2006 and to Director of Investigations in or around 2007. He was reassigned as Lieutenant in 2012.

called him "Eye Lab" on a "daily basis." Plaintiff was offended by these comments and asked to see the Sherriff to complain, but Captain Rizzi told plaintiff that the Sheriff did not want to speak with him.

Additionally, Lieutenant Farrell, Sergeant Christopher Neder, Lieutenant Eric DeProssimo[4], and Director Gilbert Nielsen[5] regularly called plaintiff "Half-Dead." Plaintiff was offended by these comments and asked his superiors to stop, but they just smiled, laughed, or ignored him.

Further, in or around 2005, Lieutenant Farrell told plaintiff to "shut the f*** up with you and your n***** pancreas." Plaintiff was upset by this remark and asked to speak to the Sheriff. However, Captain Rizzi told plaintiff that the Sheriff did not want to see him.

In 2007, doctors removed plaintiff's transplanted pancreas as a result of a life-threatening aortic tear. He was hospitalized for almost two months following the tear. When plaintiff returned to work following the surgery, he was required to re-qualify for firearms by shooting a submachine gun that he

---

[4] The harassment began when DeProssimo was a Sergeant. He was promoted to Lieutenant in 2012.

[5] The harassment began when Nielson was a Sergeant. He was promoted to Lieutenant in April 2013 and again promoted to Director in 2014.

A-4036-17T1

had never used before. When he had a problem seeing the target through the weapon, Chief Michael Barbieri told plaintiff, using expletives, that he should not be working with the Department if he was unable to see the target.

Motions in Limine

In August 2015, plaintiff filed the instant lawsuit claiming the pervasive verbal abuse subjected him to a hostile work environment. On October 16, 2017, just prior to the start of trial, the trial court decided the two motions in limine that are the subject of this appeal.

   a. Plaintiff's Motion in Limine to Bar Evidence Relating to the Semenza incident

The first motion concerned a disciplinary proceeding arising from a June 2013 incident in which plaintiff and his partner, Investigator Dominick Semenza, were involved in an on-duty motor vehicle accident after the two improperly decided to drive to Piscataway in a County-owned vehicle without requesting permission. While en route, Semenza ran a red light, allegedly while texting, and hit another car. Both plaintiff and Semenza were initially charged with a variety of infractions regarding improper behavior and an internal affairs ("IA") investigation resulted.

During the first investigation, plaintiff claimed that he could not see whether Semenza was using his cell phone just prior to the accident, explaining

5

that a mobile data terminal blocked his view. The Sheriff's Department did not believe this explanation and opened a second IA investigation, ultimately charging plaintiff with infractions including untruthfulness. The investigations concluded by sustaining the charges against plaintiff and resulted in a five-day suspension for the improper behavior charges and a fifteen-day suspension for untruthfulness. The charges and suspensions were ultimately upheld by the Law Division in a November 9, 2015 unpublished opinion after plaintiff filed an action in lieu of prerogative writs.

Plaintiff made a motion in limine to exclude evidence of the Semenza incident, claiming it was irrelevant, unduly prejudicial, and inadmissible character evidence. Defendant opposed the motion, claiming that the evidence was relevant and admissible as an alternate source of plaintiff's emotional distress and as evidence of plaintiff's motive in filing this lawsuit. The trial court granted the motion in part and denied it in part, noting that:

> Rule 404 bars any reference to these proceedings as either prior bad acts or motives pursuit. 404 is clear that it's a general – prohibition on the use of character evidence or evidence of prior acts to prove that a person acted in conformity therewith. . . . There's just too much concern of opening a trial within a trial. However, defendants do raise a legitimate issue with regard to defendant's psychological damages and the need for reference to those proceedings. I will permit – I will permit the use of those proceedings or reference

to those proceedings by the defense expert for the limited purpose of the doctor's opinion as to the fact that there was a litigation pending. There will be no reference of the facts of those claims and the strength or relative weaknesses of those claims, but merely that there was a litigation pending that could have contributed to the plaintiff's psychological damages.

During trial, consistent with the court's ruling, defendant's psychology expert, Doctor Nancy Just, testified that she "constructed a time line as to each time [plaintiff] either sought psychological treatment or his general physician noted that he was depressed or if he, in one instance lost interest in things that he used to enjoy." She noted that plaintiff's depression corresponded to the time that he was under disciplinary litigation.

b. Defendant's Motion in Limine to Bar Plaintiff from Referencing Other Harassment Suits Against Defendant

The other motion at issue on appeal concerned defendant's application to exclude the testimony of eight female former Sheriff's Department employees who had filed civil complaints against defendant for sexual harassment and/or gender discrimination. These lawsuits alleged conduct that occurred from the mid-1990s to 2012. Defendant settled all of these cases with no admission of liability. Defendant claimed that the proffered testimony was irrelevant and unduly prejudicial. Plaintiff countered that to the extent defendant would assert at trial an affirmative defense based on Aguas v. State, 220 N.J. 494, 513 (2015),

the evidence was relevant and admissible to show that defendant's harassment policy and complaint procedures were "in name only."[6]

Again, the trial court granted the motion in part and denied it in part. In so ruling, the trial court concluded:

> These witnesses which the plaintiff intends to call to show a – basically to show you the inadequacy of the policy of that the policies were not being followed only serves to create confusion in the jury's mind and is really unnecessary and unduly prejudicial. I will however – so for that reason defense motion is granted in part. However, in the event that the defense raises the issue as to the adequacy of their policies or that these policies are always followed the plaintiff will be free on rebuttal to call these witnesses to rebut that argument. . . . [A]s I said in the event that the defense contends on their case that these policies are adequate or that they've always been followed and somehow plaintiff is fabricating his fears that he would be retaliated against plaintiff is free to bring those witnesses.

Trial

Following these rulings, the matter proceeded to trial. Prior to trial, the parties stipulated that plaintiff's diabetes constitutes a disability under the LAD.

---

[6] Employers are able to present their anti-harassment policies to defend against harassment claims from employees. Aguas, 220 N.J. at 500. Under Aguas, "[t]he efficacy of an employer's remedial program is highly pertinent to an employer's defense." Id. at 513

The testimony at trial conclusively established that plaintiff's disability was generally known in the workplace. Several Sheriff's Department employees who testified explained that it was well known at the Department that plaintiff had diabetes, and that it was generally understood that plaintiff's poor eyesight, pancreas transplant, and aortic tear resulted from his diabetes.

Plaintiff's specific allegations of harassment were likewise widely corroborated at trial. The Sheriff's Department employees who testified confirmed that supervisors and employees were heard calling plaintiff insulting names, including "Eye Lab," "Mr. Magoo," "Walking Dead," and "Half-Dead" on a regularly at work from 2005 until his 2017 retirement, despite plaintiff asking people to stop.

Moreover, Investigator Chris Jarema, plaintiff's former partner, testified that he heard Lieutenant Farrell tell plaintiff "F*** you [and] your n***** pancreas" in or around 2005 to 2006.

Significantly, Undersheriff Kevin Harris testified that in 2016, he disciplined Lieutenants Farrell, Neder, and DeProssimo for calling plaintiff "Eye Lab," and testified that he believed plaintiff's supervisors were being untruthful by denying this nickname.

After plaintiff rested his case, defendant made a motion to dismiss pursuant to R. 4:37-2 for failure to prove that his eye problems and pancreas transplant were connected to his diabetes, despite the prior stipulation that plaintiff's diabetes constituted a disability under the LAD. Defendant argued that the case law requires expert evidence of disabilities that are not "readily apparent" and that, although defendant had stipulated to the diabetes, "[w]e don't have any proof, necessarily, that diabetes affected the vision, or diabetes necessitated a pancreas transplant or had any effect on this aortic break."

The trial court denied defendant's motion and noted:

> I certainly had testimony coming from the plaintiff that he was diabetic, in fact, everybody agrees, yes, he was diabetic . . . . I have a substantial number of witnesses who have come forward, that that was common knowledge at the workplace that he had diabetes and that he was suffering a consequence of those diabetes with relationship to his eyesight, his pancreas and other maladies that were described by people, described by the plaintiff himself. . . . So I don't have a medical expert coming forward to give that testimony, but I certainly have a substantial amount of evidence and testimony in the case to support the argument that everybody there knew that he had diabetes and that he had other related problems related to the diabetes. . . . And so I find that the plaintiff has produced some evidence to show that the conduct occurred because of his diabetes, and that's the standard that he had to meet.

A-4036-17T1

Following the denial of its motion, the trial proceeded to defendant's case-in-chief. Defendant's witnesses, including Lieutenants Farrell, Sergeant Neder, and Lieutenant DeProssimo, Director Nielsen, Captain Rizzi, Undersheriff Angelo Falcone, and Chief Barbieri, simply and categorically denied plaintiff's allegations.

On October 24, 2017, the trial concluded at which time the jury found defendant liable and awarded a total of $885,000 to plaintiff. Specifically, the jury awarded $640,000 in compensatory damages and $245,000 in punitive damages.

Post-Trial Motion for a New Trial

Following the jury's verdict, defendant filed a motion for a new trial on the basis of the court's in limine rulings and its denial of defendant's motion to dismiss at the close of plaintiff's case-in-chief. The court denied the motion, reiterating its prior finding that the Semenza incident was irrelevant to plaintiff's motive, unduly prejudicial, and improper character evidence; and that to the extent it was relevant to emotional distress, "[d]efendant was able to adequately address that issue at trial through the testimony of [its] psychological expert and cross-examination of [p]laintiff . . . without going into details of regarding that discipline." Further, the court concluded that its conditional ruling regarding

defendant's motion in limine was a "valid balancing of the parties' concerns and did not prevent [d]efendant from introducing evidence regarding its Harassment Policy or asserting an Aguas defense." Finally, the court found that defendant "made a tactical decision to stipulate that [p]laintiff had diabetes[,]" that plaintiff's diabetes was "readily apparent to all that would work with [p]laintiff," that plaintiff met the "physical disability" standard of the LAD, and that expert evidence was not required in harassment cases.

This appeal ensued.

## II.

"The standard governing an appellate tribunal's review of a trial court's action on a new trial motion is essentially the same as that controlling the trial judge." Dolson v. Anastasia, 55 N.J. 2, 7 (1969) (citing Hager v. Weber, 7 N.J. 201, 212 (1951)).

> A new trial may be granted to all or any of the parties and as to all or part of the issues on motion made to the trial judge. . . . The trial judge shall grant the motion if, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law.
>
> [R. 4:49-1(a); ibid.]

12

<u>Motions in Limine</u>

On appeal, defendant first contends that the trial court's rulings on two motions in limine were an abuse of discretion and resulted in a miscarriage of justice requiring a new trial. We disagree.

An appellate court reviews a trial court's evidentiary rulings for abuse of discretion. <u>Brenman v. Demello</u>, 191 N.J. 18, 31 (2007). Thus, an appellate court will not disturb a trial court's evidentiary rulings unless they are "so wide of the mark that a manifest denial of justice resulted." <u>Green v. N.J. Mfrs. Ins. Co.</u>, 160 N.J. 482, 492 (1999) (quoting <u>State v. Carter</u>, 91 N.J. 86, 106 (1982)). However, an appellate court will review questions of law de novo. <u>Balsamides v. Protameen Chem., Inc.</u>, 160 N.J. 352, 372 (1999).

A motion in limine is a "pretrial request that certain inadmissible evidence not be referred to or offered at trial." <u>Cho v. Trinitas Reg'l Med. Center</u>, 443 N.J. Super. 461, 470 (App. Div. 2015) (quoting <u>Black's Law Dictionary</u> 791 (9th ed. 2009)). Although our courts generally disfavor motions in limine, trial judges retain the discretion to grant the motions when appropriate. <u>Ibid.</u>

Except in certain circumstances, relevant evidence, which is "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action[,]" is admissible. N.J.R.E. 401, 402. <u>See also</u> <u>State</u>

v. Castagna, 400 N.J. Super. 164, 174 (App. Div. 2008). The evidence must be probative of a fact that is "really in issue in the case[,]" as determined by reference to the applicable substantive law. State v. Buckley, 216 N.J. 249, 261 (2013) (quoting State v. Hutchins, 241 N.J. Super. 353, 359 (App. Div. 1990)).

A. The Semenza Incident

"Evidence of a person's character or character trait, including a trait of care or skill or lack thereof, is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion[,]" except in certain circumstances. N.J.R.E. 404(a). Further,

> evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.
>
> [N.J.R.E. 404(b); State v. Krivacska, 341 N.J. Super. 1, 38-39 (App. Div. 2001).]

In Hill v. N.J. Dept. of Corr. Comm'r Fauver, 342 N.J. Super. 273, 304-05 (App. Div. 2001), we upheld the admission of evidence that a defendant left her previous job due to allegations of embezzlement, rather than her stated reason that she was relocating following a divorce, to establish her motive for

14

filing an allegedly false sexual harassment suit. In <u>Hill</u>, the plaintiff, superintendent of a juvenile detention facility, was fired after a teacher, defendant June Peterson, made complaints that the plaintiff sexually harassed her. <u>Id.</u> at 288-89. Peterson's complaints followed an incident in which the plaintiff threatened Peterson with termination based on reports that she was having inappropriate sexual relations with the inmates. <u>Id.</u> at 287-89. Following his termination, the plaintiff brought various claims against his employer and Peterson, including "conspiracy to file false sexual harassment charges." <u>Id.</u> at 285, 289. Under those facts, we found that the issue of Peterson's motive was central to the plaintiff's claim that Peterson filed a false charge against him to salvage her position and avoid termination.

Here, in contrast, plaintiff's motive for filing the instant lawsuit is not probative of a fact that is "really in issue in the case[.]" <u>Buckley</u>, 216 N.J. at 261. The trial court properly determined that the evidence of a minor disciplinary proceeding that resulted in a brief suspension did not serve to "prove or disprove any fact of consequence to the determination of" whether the alleged conduct amounted to harassment. N.J.R.E. 401, 402; <u>Lehmann</u>, 132 N.J. at 603-04. Rather, defendant's attempt to get the prior underlying charge of untruthfulness before the jury was, as the judge correctly found, a violation of

15

N.J.R.E. 404(a). The judge properly recognized the relevance of plaintiff's prior charges to his claims of psychological damages and allowed defendant's psychologist to testify that his depression occurred in a timeframe when he was involved in disciplinary litigation. That decision was a reasonable accommodation of the parties' respective interests and consistent with governing law. We discern no abuse of discretion.

B. Unrelated sexual harassment claims

We also reject defendant's contention that the trial court abused its discretion in disposing of the defendant's motion to exclude testimony of other harassment claims against the Sheriff's Department. As the trial court found, harassment of other employees is relevant and admissible to the efficacy of an employer's remedial program when asserted as a defense. See Godfrey v. Princeton Theological Seminary, 196 N.J. 178, 201 (2008) (citing Gaines v. Bellino, 173 N.J. 301, 313 (2002)) ("In addition to considering whether an employer's preventative measures exist and have been enforced, we also have found to be relevant evidence that addressed the adequacy of an institution's response to prior reported incidents of sexual harassment. Such evidence is helpful to determine whether an institution may be permitted to disclaim vicarious liability on grounds of having exercised 'due care.'"). The trial court

16

properly applied the law by holding that the evidence would not be admissible on plaintiff's case-in-chief, but would be admissible as rebuttal should defendant pursue an Aguas defense.

We conclude that the trial court did not abuse its discretion in disposing of the subject motions in limine, and we find that those decisions did not result in a manifest injustice requiring a new trial.

Motion for Involuntary Dismissal

Next, defendant argues that the trial court erred in denying its motion for involuntary dismissal at the end of plaintiff's case-in-chief because plaintiff failed to prove "that he suffered from visible symptoms of diabetes upon which he based his claim of harassment by way of" expert testimony. We disagree.

Appellate courts "review a motion for involuntary dismissal at trial using the same standard as the trial court." Prager v. Joyce Honda, Inc., 447 N.J. Super. 124, 134 (App. Div. 2016) (citing Smith v. Millville Rescue Squad, 225 N.J. 373, 397 (2016)).

> After having completed the presentation of the evidence on all matters other than the matter of damages (if that is an issue), the plaintiff shall so announce to the court, and thereupon the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal of the action or of any claim on the ground that upon the facts and upon the law the plaintiff has shown no right

17

to relief. Whether the action is tried with or without a jury, such motion shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor.

[R. 4:37-2.]

The trial court must determine if "accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ[.]" Verdicchio v. Ricca, 179 N.J. 1, 30 (2004) (quoting Estate of Roach v. TRW, Inc., 164 N.J. 598, 612 (2000)). If reasonable minds can differ, the motion must be denied. Ibid. Stated another way, "the motion 'should be granted where no rational juror could conclude that the plaintiff marshaled sufficient evidence to satisfy each prima facie element of a cause of action.'" Prager v. Joyce Honda, Inc., 447 N.J. Super. 124, 134 (App. Div. 2016) (quoting Godfrey v. Princeton Theological Seminary, 196 N.J. 178, 197, 952 A.2d 1034 (2008)).

The LAD provides that "[i]t shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination . . . [f]or an employer, because of . . . disability . . . to discriminate against such individual in . . . conditions or privileges of employment." N.J.S.A. 10:5-12(a). A plaintiff can state a claim for discrimination under the LAD by demonstrating that his superiors and/or

18

coworkers created a hostile work environment.  See Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 603 (1993); Taylor v. Metzger, 152 N.J. 490, 498 (1998).  To prove that harassing workplace conduct amounts to hostile work environment discrimination based on a plaintiff's disability, he or she must demonstrate that the conduct "(1) would not have occurred but for the employee's [disability]; and it was (2) severe or pervasive enough to make a (3) reasonable [diabetic] believe that (4) the conditions of employment are altered and the working environment is hostile or abusive."  Lehmann, 132 N.J. at 603-04 (emphasis in original).  See also Leonard v. Metropolitan Life Ins. Go., 318 N.J. Super. 337, 344 (App. Div. 1999).

In a hostile work environment case, the focus in on the harasser's conduct, not the plaintiff's disability.  See Leonard v. Metropolitan Life Ins. Co., 318 N.J. Super. 337, 342-44 (App. Div. 1999).  For instance, in Leonard, the plaintiff suffered from Type II insulin-dependent diabetes and had to inject himself with insulin twice a day.  Id. at 339.  If his blood sugar dropped, the plaintiff felt shaky and needed to ingest some form of simple sugar.  Ibid.  The plaintiff's claim arose from two incidents during which his supervisor told him, using expletives, that he could not miss a meeting to eat lunch despite his diabetic condition.  Id. at 340.  The plaintiff brought a LAD claim of hostile work

19

environment based on disability, claiming that he was subjected to a hostile work environment "because of his physical handicap, diabetes." Id. at 339.

The motion judge granted summary judgment to the defendant due to the plaintiff's failure to "demonstrate he had been required to labor under conditions unreasonably different from his co-employees," but we reversed and remanded for trial. Id. at 339, 346. In reversing, we explained that, under the hostile work environment standard:

> [i]t is the harasser's conduct, in this case [the plaintiff's supervisor's] statements to or treatment of plaintiff, that should have been the focus of the motion judge's inquiry. . . . The issue is whether a rational fact finder could determine that [the supervisor's] conduct occurred because of plaintiff's diabetes and that a reasonable diabetic would consider the conduct "sufficiently severe or pervasive to alter the conditions of employment and create an intimidating, hostile, or offensive working environment."
>
> [Id. at 344 (citing Lehmann, 132 N.J. at 603-04; Taylor, 152 N.J. at 498).]

We reject defendant's argument that Viscik v. Fowler Equipment Co., 173 N.J. 1 (2002) and Clowes v. Terminix International, 109 N.J. 575 (1988) required plaintiff to provide expert or treating physician medical testimony to causally relate his limited eyesight, pancreas transplant and aortic tear to his conceded disability of diabetes.

20

In Clowes, the "principal issue . . . is whether alcoholism is to be deemed a handicap under the New Jersey Law Against Discrimination[.]" 109 N.J. at 577. There, the plaintiff alleged that he was unlawfully discharged from his employment due to his alcoholism. Id. at 584. After consideration of the plaintiff's expert testimony, the Court held that alcoholism was a "handicap" under the LAD. Id. at 591-93, 595. However, the Court also concluded that the plaintiff failed to prove that he suffered from alcoholism because the "only evidence in the record regarding Clowes' alleged alcoholism is his own assertion that he was an alcoholic, and partial medical records from his hospitalization" at a rehabilitation center. Id. at 598. The Court noted that the plaintiff presented no evidence that he was an alcoholic via his expert or any other witness who had conducted a physical examination or reviewed the relevant medical records. Id. at 597.

In Viscik, the plaintiff alleged that her employer terminated her because of her morbid obesity. 173 N.J. at 5. The plaintiff attributed her morbid obesity to two factors: a "metabolic disorder that prevents [her] body from breaking down fats," and injuries from a car accident which resulted in degenerative arthritis, restricted lung capacity, and depression. 173 N.J. at 6. To support her claim, the plaintiff presented the testimony of her treating physician who

A-4036-17T1

"testified about Viscik's illnesses, including her obesity and its complications, as a medical expert qualified in internal medicine and weight-loss." Id. at 10. The Court concluded that "Viscik's testimony, medical history, and her expert's opinion fully support the finding that she established a physical handicap within the meaning of LAD." Id. at 17.

Viscik and Clowes, however, did not involve hostile work environment claims and are thus distinguishable. The focus in a hostile work environment case is the harasser's conduct, not the plaintiff's disability. Leonard, 318 N.J. Super. at 342-44. Here, as in Leonard, there was abundant evidence that plaintiff suffered verbal harassment from his coworkers and superiors because of his diabetes. Id. at 339. That made out a prima facie case of harassment and therefore the trial court properly denied the motion for involuntary dismissal.

Regardless, as the trial court noted, defendant, apparently for strategic purposes, stipulated that plaintiff was diagnosed with Type I diabetes and that his diabetes constitutes a disability under the LAD. Thus, unlike in Viscik and Clowes, there was no need for medical testimony that would demonstrate that plaintiff's condition amounted to diabetes or that it constituted a disability under the LAD. Cf. 173 N.J. at 17; 109 N.J. at 577. Moreover, as the trial court found, there was abundant testimony establishing that plaintiff's limited eyesight,

pancreas transplant, and aortic tear were generally understood throughout the workplace to have been caused by his diabetes. Thus, accepting all of plaintiff's testimony as true, and affording plaintiff all inferences in his favor, a reasonable jury could, and did, find that defendant's employees harassed plaintiff as a result of his diabetes, and that the harassment was severe and pervasive. See Verdicchio, 179 N.J. at 30; Prager, 447 N.J. Super. at 134. Therefore, the trial court correctly denied defendant's motion to dismiss.

To the extent we have not specifically addressed any arguments raised by defendant, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION