NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3857-17T3

COREY DICKSON,

      Plaintiff-Appellant,

v.

COMMUNITY BUS LINES,
INC., d/b/a COACH USA,
CHARLIE DIGGS, RUDY
BHAGWANDAS, and DR.
JEFFREY LIVA,

      Defendants-Respondents.

_____

> **APPROVED FOR PUBLICATION**
>
> **April 4, 2019**
>
> **APPELLATE DIVISION**

Argued March 25, 2019 – Decided April 4, 2019

Before Judges Sabatino, Haas and Mitterhoff.

On appeal from Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-0633-16.

Mark A. Mulick argued the cause for appellant.

Christina A. Stoneburner argued the cause for respondents (Fox Rothschild LLP, attorneys; Christina A. Stoneburner, of counsel and on the brief; Asad Rizvi, on the brief).

The opinion of the court was delivered by

HAAS, J.A.D.

Plaintiff Corey Dickson appeals from the Law Division's April 30, 2018 order granting summary judgment to defendants and dismissing his complaint alleging that defendants violated the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, by subjecting him to a hostile work environment.[1] We affirm. We do so because a perceived disability claim based on obesity must be grounded upon direct or circumstantial evidence that defendants perceived the plaintiff to be disabled due to a medical condition that caused him or her to be overweight. Such proof is absent from this record and, accordingly, summary judgment was correctly granted.

We begin by reciting the essential facts concerning plaintiff's hostile work environment claim, which is the only argument he continues to press on appeal, and view these facts in the light most favorable to plaintiff, the non-moving party. Polzo v. Cty. of Essex, 209 N.J. 51, 56 n.1 (2012) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995)).

---

[1] In his complaint, plaintiff also asserted claims under the LAD alleging that defendants discriminated against him based on his weight; failed to provide him with accommodations; retaliated against him; and constructively discharged him from his job. Plaintiff also asserted claims for intentional infliction of emotional distress and wrongful termination. Judge Ernest M. Caposela granted summary judgment to defendants on all of these claims, and plaintiff does not challenge this determination on appeal.

Plaintiff began working as a bus driver for defendant Community Bus Lines, Inc. (Community) in 2005. In order to maintain his employment as a bus driver, plaintiff must hold a valid Commercial Driver's License (CDL). The United States Department of Transportation (DOT) requires all CDL holders to pass a medical examination every two years and obtain a medical certification card verifying that they are fit to drive.

During the ten years he worked for Community as an active driver, plaintiff weighed between 500 and 600 pounds. He passed his required medical examinations during this period, and Community recognized his accomplishments on the job by giving him several awards.

As a bus driver, plaintiff was required to inspect his bus before beginning his route, and inspect it again at the conclusion of his work day. Combined, these tasks took approximately forty minutes to complete. Plaintiff drove his bus during the remainder of his shift. At the end of the day, plaintiff sometimes spent time in Community's breakroom talking and joking with the other drivers. Plaintiff testified at his deposition that the drivers were his friends. He also only had contact with his supervisors when he was at the Community depot.

Plaintiff testified that the other drivers and his supervisors regularly made rude comments to him about his weight. Among other things, they told

plaintiff that he was "fat," "must weigh a thousand pounds," would likely eat all the food out of the snack machines, was "as big as a bus" or "a 747," and might break chairs if he sat on them.

At the same time, however, plaintiff conceded that he made jokes with, and teased, other employees at the depot. He referred to himself as "fat boy" in the presence of his coworkers, and also admitted that he called himself "fat" on his Facebook page, where he had "friended" some of the other drivers so that they could view and comment on his posts.

Although plaintiff was a union member, and alleged that he complained to his supervisors about the remarks he heard at work, he presented no documentation to support this assertion. Plaintiff's supervisors denied ever hearing any comments of this nature, and stated that plaintiff never complained about anything during his employment. The supervisors also testified that no one at Community viewed plaintiff as disabled; instead, he was a valued employee and a good driver.

In April 2015, Dr. Maureen Kelleher[2] conducted plaintiff's DOT medical examination. Dr. Kelleher found that plaintiff could not bend over to take off his shoes, and had "a massive pedal edema and venous stasis." The doctor

---

[2] Dr. Kelleher was employed by an outside company, and was certified by the DOT to conduct license examinations.

temporarily disqualified plaintiff from driving a bus, pending further testing. She opined that plaintiff needed a sleep apnea study, a mobility test, and an echocardiogram before he could be cleared to resume driving. Dr. Kelleher testified that she did not determine whether plaintiff was disabled, and only found that based on DOT's standards, and the criteria provided by the Federal Motor Carrier Safety Administration, additional testing was required before plaintiff could be certified to drive a bus.

Dr. Kelleher was not plaintiff's primary care physician and, therefore, she did not write a prescription ordering these tests for plaintiff. Although plaintiff had health insurance through Community, he never arranged to complete the required tests. As a result, plaintiff's supervisors advised him that he had been placed "out of service" until he was tested and received a medical certification card.

The supervisors then referred plaintiff for a second opinion with Dr. Jeffrey Liva, a board-certified physician in preventative medicine with a subspecialty in occupational medicine. Confirming Dr. Kelleher's conclusions, Dr. Liva found that plaintiff needed further testing before a medical certification card could be issued. Dr. Liva stated that the swelling in plaintiff's legs could be an indicator of heart disease, and that his weight might aggravate health conditions such as sleep apnea. Like Dr. Kelleher, Dr. Liva

5

did not determine that plaintiff was disabled and, because he was not plaintiff's primary care doctor, he did not write a prescription for the testing. Plaintiff's own personal physician agreed with Dr. Kelleher and Dr. Liva about the need for testing, but plaintiff did not pursue it.

As a result, plaintiff remained on a leave of absence from Community.[3] In February 2016, plaintiff filed his complaint against defendants. In July 2017, defendants noticed plaintiff for an Independent Medical Examination as part of this litigation, and he was diagnosed with obstructive sleep apnea. Two days later, he suffered a stroke. By the time the matter was ripe for consideration of defendants' motion for summary judgment in April 2018, plaintiff's cardiologist had diagnosed him with peripheral edema, obstructive sleep apnea, morbid obesity, chronic congestive heart failure, myocardial systolic dysfunction, and other conditions.

After oral argument on defendants' motion for summary judgment, Judge Caposela rendered a comprehensive written decision, and rejected plaintiff's claim that his obesity constituted a disability under the LAD, or that defendants had subjected him to a hostile work environment based upon his weight. Relying on our decision in <u>Schiavo v. Marina District Developmental</u>

---

[3] Community continued to offer health insurance coverage to plaintiff until he stopped paying his premiums in June 2016.

A-3857-17T3

Co., LLC, the judge observed that "there is no protected class [under the LAD] based solely on one's weight." 442 N.J. Super. 346, 375 (App. Div. 2015). Instead, as the Supreme Court held in Viscik v. Fowler Equipment Co., a plaintiff's obesity will only constitute a disability under the LAD if the plaintiff demonstrates that this condition is "caused by bodily injury, birth defect[,] or illness." 173 N.J. 1, 17 (2002) (quoting N.J.S.A. 10:5-5(q)). The Court also noted that a plaintiff must ordinarily present expert medical evidence in order to prove the required element of causation. Id. at 16.

Here, the judge found that plaintiff was undoubtedly obese. However, plaintiff did not establish, through the introduction of expert medical testimony or otherwise, that his condition was caused by bodily injury, birth defect, or illness, such as the genetic metabolic condition that caused the plaintiff's obesity in Viscik. Id. at 17. As the judge explained:

> There is no evidence in the record that [p]laintiff's weight condition in 2015 had an underlying medical basis. Plaintiff testified that he had never been diagnosed with any medical condition that caused him to gain weight or been prescribed a medication which caused weight gain. He therefore does not have a prima facie disability discrimination claim under the []LAD.

The judge also found that contrary to plaintiff's claim, defendants never perceived plaintiff as "disabled." Instead, Community presented several awards to plaintiff over his ten-year tenure with the company; he drove a

regular route; and the employer attempted to assist him in fulfilling his DOT medical requirements by arranging for him to see another doctor for a second opinion after he failed his first examination. The judge stated:

> [T]here is no credible evidence in the record supporting a claim that . . . [d]efendants perceived [p]laintiff to be disabled. Both [of his supervisors] testified that they never perceived [p]laintiff to be disabled. Both Doctors Liva and Kelleher testified that their medical diagnos[e]s do not include making a determination of disability. Plaintiff's reason for submitting to a medical examination in April 2015 was for him, as a bus driver, to undergo regular medical examinations to maintain a CDL pursuant to [DOT] rules. Plaintiff claims he was subjected to a perceived disability discrimination due to his obesity, however, "conclusory and self-serving assertions by one of the parties are insufficient to overcome" summary judgment motions. Puder v. Buechel, 183 N.J. 428, 440-41 (2005).

Even assuming that plaintiff had established that he was disabled within the intendment of the LAD, the judge found no merit to plaintiff's assertion that he was subjected to a hostile work environment in violation of the LAD. The judge noted that

> [t]o make a prima facie case of hostile work environment[,] a plaintiff must prove that they are initially protected under [the LAD] and that the "complained-of conduct (1) would not have occurred but for the employee's [protected class]; and it was (2) severe or pervasive enough to make a (3) reasonable [person] believe that (4) the conditions of employment are altered and the working environment is hostile or abusive." Cutler v. Dorn, 196 N.J. 419, 430 (2008).

8

"Severity and workplace hostility are measured by surrounding circumstances." Taylor v. Metzger, 152 N.J. 490, 506 (1998). (fourth and fifth alterations in original).

In concluding that plaintiff did not meet this standard, the judge observed that while "[p]laintiff endured comments regarding his weight and size from other co-workers," he "himself even made jokes and comments regarding his weight and size." Under these circumstances, the judge concluded that "[w]hile these comments were hurtful," the remarks were not severe or pervasive enough to alter any of the conditions of plaintiff's employment. This appeal followed.

On appeal, plaintiff argues that "the trial court erred in granting defendants' motion for summary judgment and dismissing [his] claim for hostile work environment based upon perceived disability under" the LAD. We disagree.

Our review of a summary judgment motion is de novo, applying the same legal standard as the trial court, namely, the standard set forth in Rule 4:46-2(c). Conley v. Guerrero, 228 N.J. 339, 346 (2017). Thus, we consider, as the trial judge did, whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Town of Kearny v. Brandt, 214 N.J. 76, 91

(2013) (quoting Brill, 142 N.J. at 540). If there are no genuine issues of material fact, we must then decide whether the trial court correctly interpreted the law. See Prudential Prop. & Cas. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998). We accord no deference to the trial judge's conclusions on issues of law and review these issues de novo. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

Having reviewed the record, we conclude there are no genuine issues of material fact and that defendants were entitled to summary judgment as a matter of law. Therefore, we affirm the April 30, 2018 order substantially for the reasons set forth by Judge Caposela in his thoughtful and thorough written opinion. We add the following comments.

To prevail on a hostile work environment claim, a plaintiff must show "(1) that [he or she] is in a protected class; (2) that [he or she] was subjected to conduct that would not have occurred but for that protected status; and (3) that it was severe or pervasive enough to alter the conditions of employment." Victor v. State, 203 N.J. 383, 409 (2010) (citing Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 603-04 (1993)). Under this framework, "the factfinder's first inquiry is whether the plaintiff has proven that he or she had a disease or condition recognized as a disability under the LAD." Delvecchio v. Twp. of Bridgewater, 224 N.J. 559, 573 (2016).

We agree with the judge that plaintiff failed to meet this threshold requirement under the LAD because his obesity was not a disability caused by a bodily injury, birth defect, or illness. Viscik, 173 N.J. at 17 (concluding that obesity, standing alone, is not a disability under the LAD); see also Schiavo, 442 N.J. Super. at 375 (recognizing that a plaintiff's "excessive weight" is not a disability under the LAD); Gimello v. Agency Rent-A-Car Sys., 250 N.J. Super. 338, 357, 365 (App. Div. 1991) (holding that plaintiff's obesity was a disability based upon his medical expert's "unrefuted testimony" that his excessive weight was caused by "a condition covered by the broad language of [N.J.S.A. 10:5-5(q)]").

On appeal, plaintiff no longer argues that he suffered from an actual disability under the LAD. Instead, he asserts that his supervisors and coworkers discriminated against him based upon their perception[4] that he had a disability because he was overweight. Again, we disagree.

LAD claims based upon a perceived disability still require "a perceived characteristic that, if genuine, would qualify a person for the protections of the LAD." See Cowher v. Carson & Roberts, 425 N.J. Super. 285, 296 (2012); see also Rogers, 185 N.J. Super. at 112 ("[T]hose perceived as suffering from a

_____

[4] The LAD prohibits employers from discriminating against employees based upon actual disability or perceived disability. Rogers v. Campbell Foundry, Co., 185 N.J. Super. 109, 112-13 (App. Div. 1982).

particular handicap are as much within the protected class as those who are actually handicapped.").

Plaintiff primarily relies upon Cowher in support of his argument on this point; however, this reliance is misplaced because that case is readily distinguishable from the circumstances presented here. In Cowher, the defendant erroneously believed that the plaintiff was Jewish, and subjected him to various anti-Semitic comments. 425 N.J. Super. at 293. This court found that "if [a] plaintiff can demonstrate that the discrimination that he claims to have experienced would not have occurred but for the perception that he was Jewish, his claim is covered by the LAD." Id. at 297. Because the defendant perceived the plaintiff as being a member of a protected class, we held that the plaintiff's discrimination claim could proceed under the LAD. Ibid.

As explained above, however, obesity alone is not protected under the LAD as a disability unless it has an underlying medical cause, a condition that plaintiff failed to meet in the present case. Viscik, 173 N.J. at 17. Here, plaintiff did not establish that defendants viewed him as anything other than obese, which is not a protected class under the LAD. Just as significantly, he did not demonstrate that defendants perceived him as being disabled.

12                                                                              A-3857-17T3

In this regard, the record was one-sided in support of the fact that plaintiff's supervisors never took any actions to change the conditions of his employment as the result of any "perceived disability." For the ten years plaintiff worked at Community, he drove a regular route, and never alleged that he received less pay than other drivers or had to work longer or fewer hours. In fact, Community recognized plaintiff's good work on several occasions by giving him awards.

In addition, plaintiff passed each of his mandatory medical examinations between 2005 and 2015 even though he weighed over 500 pounds from the date of his hire. Both of his supervisors testified that they did not consider plaintiff to be disabled, and neither of the independent doctors who examined plaintiff ever made that determination.

In response, plaintiff argues that defendants must have perceived him as disabled because when Community hired him in 2005, it did so only because he threatened to sue Community if it denied him a position because he was obese. Outside of this claim, however, the record does not contain any evidence to suggest that defendants perceived plaintiff as being disabled during the entire ten-year course of his employment. Indeed, even after he

failed the two independent medical examinations[5] required to maintain his CDL license, Community kept his job open in the hope that, as his own doctor recommended, plaintiff would pursue the testing needed to restore his license so he could return to work.

Under these circumstances, we are satisfied that the judge properly rejected plaintiff's claim that despite their testimony to the contrary, his supervisors perceived him to be disabled. Puder, 183 N.J. at 440-41 (holding that "conclusory and self-serving assertions by one of the parties are insufficient to overcome" a motion for summary judgment).

Because plaintiff was not able to demonstrate that he suffered from a disability or a perceived disability covered by the LAD, the judge properly dismissed his hostile work environment claim. Even if this were not the case, we discern no basis for disturbing the judge's conclusion that plaintiff also failed to demonstrate that the comments his coworkers made to him about his weight created such an environment.

_____

[5] Plaintiff also argues in passing that he was referred for testing only after a supervisor found him sleeping in one of the buses in the company's garage. As discussed above, however, both of the medical examinations involved in this case were initiated as part of plaintiff's regular, two-year license examination process. Both examinations were conducted by independent doctors not affiliated in any way with Community. Defendants never required plaintiff to undergo any medical testing beyond what was mandated by the DOT for licensure.

In addition to establishing that he or she suffers from a disability as part of his or her hostile work environment claim, a plaintiff must also prove that the "conduct complained of . . . was severe and pervasive enough to make a reasonable person in the employee's shoes believe that the conditions of employment had been altered and the working environment had become hostile and abusive." Leonard v. Metro. Life Ins. Co., 318 N.J. Super. 337, 344 (App. Div. 1999). The judge correctly determined that plaintiff did not meet that burden in this case.

"Severity and workplace hostility are measured by surrounding circumstances." Taylor, 152 N.J. at 506. In assessing hostile work environment claims, "all the circumstances" must be looked at "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Green v. Jersey City Bd. of Educ., 177 N.J. 434, 447 (2003) (quoting Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 19-20 (2002)).

Here, plaintiff alleged that his supervisors and coworkers regularly made unflattering references to his weight. However, plaintiff testified that he liked to joke around with his coworkers because they were his friends. The coworkers' comments were not physically threatening, and were in line with

15

the self-deprecating comments plaintiff made about himself to the other Community employees when he voluntarily spent time with them in the breakroom after work. Contrary to plaintiff's contention, these remarks were in no way similar to the abhorrent racial epithet the defendant made to a sheriff's officer who was his subordinate in Taylor, where the Court held that the supervisor's use of a single racially-charged slur was sufficient to establish a prima facie case of hostile work environment. 152 N.J. at 502-03.

In addition, plaintiff never claimed that the rude remarks unreasonably interfered with his work driving the bus. Until he was unable to secure a medical certification card, plaintiff was a valued employee who received several commendations. Community never fired plaintiff, and kept his job open in the hope that he would be able to pass his licensing examination. Under the totality of these circumstances, we agree with the judge that the cumulative effect of the coworkers' comments was not sufficiently "severe or pervasive" to create an actionable hostile work environment claim under the LAD.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16