**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0893-20

CARMEL REALTY, INC.,

    Plaintiff-Respondent/
Cross-Appellant,

v.

FAIRVIEW BERGEN
ASSOCIATES, LLC, and
JP MANAGEMENT, LLC,

    Defendants-Appellants/
Cross-Respondents.

_____

        Submitted February 17, 2022 – Decided February 28, 2022

        Before Judges Haas and Mitterhoff.

        On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-000173-19.

        Brach Eichler, LLC, attorneys for appellants/cross-respondents (Bob Kasolas, of counsel and on the briefs).

        Barto & Barto, LLC, attorneys for respondent/cross-appellant (Raymond Barto, on the briefs).

PER CURIAM

In this dispute over a lease involving twenty-eight parking spaces in an apartment complex garage, defendants Fairview Bergen Associates, LLC (FBA) and J.P. Management, LLC appeal from the Chancery Division's (1) April 17, 2020 order granting plaintiff Carmel Realty, Inc.'s cross-motion for partial summary judgment and dismissing defendants' affirmative defenses; (2) June 9, 2020 order denying defendants' motion for reconsideration; and (3) October 22, 2020 final judgment in favor of plaintiff following a bench trial. Plaintiff cross-appeals from the portion of the October 22, 2020 judgment that denied its request for access to the parking spaces through all three doors of the garage. After reviewing the record in light of the contentions the parties raise on appeal, we affirm the three orders substantially for the reasons set forth in Judge James J. DeLuca's comprehensive written decisions supporting each of his rulings.

The judge extensively detailed the underlying procedural history and facts of this case in his three opinions. Therefore, we need only briefly summarize this material here.

Joseph Berardo and Oded Aboodi were equal partners in two companies, Crystal Lake, Inc. and Aras Properties, Inc. (Aras). Crystal Lake owned commercial real property at 371 Bergen Boulevard in Fairview (the 371

Property).  Aras owned the property next door at 361 Bergen Boulevard (361 Property).  Aras had retail space on the first floor of its building and three residential apartments on the second floor.

On April 1, 1994, Crystal Lake agreed to lease Aras twenty-eight parking spaces in a garage it was constructing, along with an apartment building, at the 371 Property.  Aboodi signed the written lease as the president of both companies.  The lease term was ninety-nine years, and the annual rent was $1 per year.  Aras also agreed to secure insurance for the parking spaces.  The companies filed a Memorandum of Lease documenting this arrangement with the county clerk's office.

On July 21, 1994, Crystal Lake sold the 371 Property to a third party, Fairview Associates 94 LP (Fairview 94).  That company completed construction of the apartment building and garage.  At the beginning of the lease term, Aras paid Fairview 94 the annual rent each year, but later simply paid the rest of the rent for the lease term in a lump sum.  Aras also obtained the required insurance coverage each year.

Plaintiff asserted Aras used the parking spaces after Fairview 94 finished the garage.  Aras' employees parked in the garage and the company also stored equipment and other materials in the leased area.

A-0893-20

The parking garage had three entrance doors. The lease did not designate which entrance Aras was to use to access its spaces. The garage's main point of ingress was through the "northern entrance." There was also a "southern entrance," which was primarily used to admit vendors, and a side-street access door known as the "Morningside Avenue entrance." Plaintiff claimed Aras had a key permitting it to use the southern entrance, which was nearer to its designated parking spaces than the northern entrance.

On May 31, 2001, Aboodi executed an "Assignment & Assumption Agreement" on behalf of Aras that assigned the parking lease to plaintiff, a real estate property company. Berardo was plaintiff's president. On August 11, 2004, Aras conveyed the 361 Property to plaintiff.

After plaintiff obtained title to the 361 Property, it stored construction materials and other items on the first floor and rented the three second-floor apartments. Plaintiff continued to use some of the twenty-eight parking spaces in the parking garage on the 371 Property and maintained the required insurance.

On November 1, 2018, Fairview 94 sold the 371 Property to defendant FBA. According to FBA's managing member, John Pjeternikaj, defendants were aware there was a lease in effect for the twenty-eight parking spaces when FBA purchased the 371 Property. The Agreement of Sale had a copy of the April 1,

4

1994 lease attached to it as an exhibit, and Fairview 94 "represent[ed] that the Crystal/Aras Lease is currently in full force and effect, and there have been no defaults by the Landlord under the Crystal/Aras Lease."

On behalf of plaintiff, Berardo also provided defendants and Fairview 94 with a Tenant Estoppel Certificate attesting that the lease was "in full force and effect"; did not expire until March 31, 2093; and that the rent had already been paid through that date. In addition, FBA stated it was "satisfied with the Parking Lease Estoppel and layout of parking spaces subject thereto" in the First Amendment to Agreement of Sale relating to its purchase.

After FBA became the landlord under the parking lease, plaintiff noticed that unauthorized vehicles were parking in its spaces. It notified Pjeternikaj of the problem, and FBA took immediate steps to correct it. Thereafter, plaintiff asserted it continued to use the parking spaces and to enter the garage through the southern entrance.

In March 2019, however, plaintiff claimed defendants changed the lock on the southern entrance and its key no longer worked. Defendants denied changing the lock but denied plaintiff's request to permit it to enter the garage through the southern entrance. Plaintiff also discovered that defendants had fenced off two of its parking spots and were using the spaces for storage.

A-0893-20

On July 3, 2019, plaintiff filed a complaint and order to show cause against defendants seeking an order permitting it access to the garage and its parking spaces through the southern entrance. Defendants responded by filing a counterclaim for a declaratory judgment that the lease was void and unenforceable and that plaintiff had surrendered or abandoned its rights under it.[1]

Both parties subsequently filed motions for summary judgment. In his April 17, 2020 decision, Judge DeLuca denied defendants' motion in its entirety and plaintiff's motion to the extent it sought a final judgment against defendants because a trial was needed to resolve the factual disputes raised by the parties. However, the judge considered the merits of defendants' counterclaims and affirmative defenses because these issues involved questions of law.

Defendants asserted the lease was not valid because it was not "the result of arm's length transactions between Aras and Crystal Lake" and was not "entered into for legal consideration." Defendants also argued the terms of the lease were unconscionable and violated the statute of frauds and best evidence rule. Judge DeLuca rejected each of these contentions.

---

[1] Judge DeLuca ordered defendants to permit plaintiff to access the garage through the northern entrance during the pendency of the trial court litigation.

A-0893-20

Addressing the propriety of the April 1, 1994 lease agreement between Crystal Lake and Aras, the judge found that although the partners in each were the same, the companies were separate legal entities. The judge stated:

> The fact that such entities may have been owned . . . by the same individuals does not make the Parking Lease any more or less enforceable than if it had been entered into by entities controlled by different members or shareholders. Thus, this court rejects [d]efendants' argument that this was anything other than an arm's length transaction between two separate entities. Defendants provide no evidence, and only speculation, as to the bona fides of these entities.

Judge DeLuca also found the lease was supported by adequate consideration. "Consideration is the price bargained for and paid for a promise." Friedman v. Tappan Dev. Corp., 22 N.J. 523, 535 (1956). "Consideration may take many forms and may be based upon either 'a detriment incurred by the promisee or a benefit received by the promisor.'" Seaview Orthopaedics ex rel. Fleming v. Nat'l Healthcare Res., Inc., 366 N.J. Super. 501, 508 (App. Div. 2004) (quoting Cont'l Bank of Pa. v. Barclay Riding Acad., Inc., 93 N.J. 153, 170 (1983)). In determining whether a contract should be enforced, the court is not responsible for questioning the "adequacy of consideration" because consideration is not dependent "upon the comparative value of the 'things' exchanged." Id. at 508-09 (internal quotations omitted). Consideration "must

7

merely be valuable in the sense that it is something that is bargained for in fact." Id. at 509 (quoting Borbely v. Nationwide Mut. Ins. Co., 547 F. Supp. 959, 980 (D.N.J. 1981)).

Consistent with these principles, Judge DeLuca determined that Aras, and later plaintiff, paid the required rent and provided the necessary insurance under the lease. In return, Fairview 94 and defendants, as that company's successor, provided the twenty-eight parking spaces to plaintiff.

While the annual rental fee was nominal, Judge DeLuca found the contract was not unconscionable. The judge noted that defendants were fully aware of the existence of the lease when FBA purchased the 371 Property from Fairview 94. The lease was a matter of public record because it was filed with the county clerk. In addition, plaintiff provided defendants with a Tenant Estoppel Certificate attesting to the fact that the agreement was in full force and effect. FBA and Fairview 94 even attached the lease to their contract of sale, and FBA stated in the first amendment to the contract that it was satisfied with the estoppel document and the layout of the parking spaces. Based upon these undisputed facts, the judge found no basis for defendants' claim that the terms of the lease were unconscionable.

8

Judge DeLuca also rejected defendants' argument that the lease should be declared void under the statute of frauds and barred from evidence by the best evidence rule because plaintiff could only produce a copy of it rather than the original. The judge found the terms of the lease were well known to the parties and had been in effect since 1994. As noted above, the lease was recorded with the county clerk and Pjeternikaj admitted he was aware of the lease at the time FBA bought the 371 Property. There was therefore no genuine question raised as to the authenticity of the lease agreement that would require it to be voided or barred from evidence.

Defendants thereafter filed a motion for reconsideration, raising the exact same arguments Judge DeLuca addressed in his April 17, 2020 decision. The judge denied this motion because defendants did not show the prior rulings were palpably incorrect or that the court failed to consider or appreciate the significance of defendants' arguments or the evidence they presented in the prior proceeding.

Judge DeLuca then conducted a trial on the remaining issues in dispute and heard testimony from six witnesses, including Berardo and Pjeternikaj. Based upon his review of that testimony and the documentary evidence, the judge found no evidence that plaintiff ever intended to abandon or surrender its

9

right to the twenty-eight parking spaces under the lease. Plaintiff paid the rent due on the lease in full and maintained the required insurance. It prepared a Tenant Estoppel Certificate, provided defendants with a list of the cars authorized to park in the spaces, objected when defendants permitted other individuals to use the spaces, and filed a lawsuit to enforce the terms of the lease when the dispute could not be resolved.

Finally, Judge DeLuca rejected plaintiff's claim that it was entitled to access the garage through the southern entrance. The judge found the lease agreement was silent on the question of the appropriate way to enter the garage. The judge determined the northern entrance was the main means of ingress for the garage and served as a security checkpoint. On the other hand, the southern entrance was at the end of a one-lane alley and could only accommodate one car at a time. Defendants used the Morningside Avenue entrance almost exclusively to move trash containers to the street for collection. Under these circumstances, the judge concluded plaintiff could continue to enter the garage only through the northern entrance.

On appeal, defendants raise the same contentions Judge DeLuca painstakingly considered and resolved in his lengthy written decisions. Defendants again assert "the parking lease is invalid and unenforceable" and that

10

plaintiff's claim to the parking spaces "is barred by the statute of frauds [and the] best evidence rule." Defendants also argue plaintiff "abandoned and surrendered the parking spaces" and that the judge did not consider all of the evidence it presented on these issues. In its cross-appeal, plaintiff repeats its contention that its access to the garage should not be limited to the northern entrance. We discern no basis for disturbing Judge DeLuca's rejection of these claims.

With regard to Judge DeLuca's April 17, 2020 order, our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court, namely, the standard set forth in Rule 4:46-2(c). Conley v. Guerrero, 228 N.J. 339, 346 (2017). Thus, we consider, as Judge DeLuca did, whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

If, as here, there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." Dickson v. Cmty. Bus Lines, 458 N.J. Super. 522, 530 (App. Div. 2019) (citing Prudential Prop. & Cas.

11

Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998)). We accord no deference to the trial judge's conclusions of law and review these issues de novo. Nicholas v. Mynster, 213 N.J. 463, 478 (2013). However, this court should affirm the judgment if it concludes that the trial court's conclusions of law were correct. Henry v. N.J. Dept. of Human Servs., 204 N.J. 320, 330 (2010).

We review Judge DeLuca's June 9, 2020 order denying defendants' motion for reconsideration to determine whether the judge abused his discretionary authority. Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). Reconsideration should only be used "for those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence . . . ." Id. at 384 (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

Finally, our review of Judge DeLuca's fact-finding following the bench trial on the issues of whether plaintiff abandoned or surrendered its right to the parking spaces and whether plaintiff could access the garage through the southern or Morningside Avenue entrances is limited. Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). "The general rule is that findings by

12

the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). However, we owe no deference to a trial court's interpretation of the law, and review issues of law de novo. Mountain Hill, L.L.C. v. Twp. Comm. of Middletown, 403 N.J. Super. 146, 193 (App. Div. 2008).

Applying these standards, we conclude that Judge DeLuca's factual findings are fully supported by the record and, in light of those findings, his legal conclusions are unassailable. We therefore affirm substantially for the reasons that the judge expressed in his well-reasoned opinions.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0893-20