**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0859-22

RONDELL HADDOCK,

    Plaintiff-Appellant,

v.

TOWN OF CLINTON,

    Defendant-Respondent.

_____

Argued January 29, 2024 – Decided July 11, 2024

Before Judges Gilson, DeAlmeida, and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Docket No. L-0119-21.

Charles Z. Schalk argued the cause for appellant (Savo, Schalk, Corsini, Warner, Gillespie, O'Grodnick & Fisher, PA, attorneys; Charles Z. Schalk, of counsel and on the briefs).

Stefani C. Schwartz argued the cause for respondent (Hatfield Schwartz Law Group, LLC, attorneys; Stefani C Schwartz, of counsel and on the brief; Andreya DiMarco, on the brief).

PER CURIAM

In this employment discrimination action, plaintiff Rondell Haddock appeals from a November 9, 2022 order granting summary judgment to defendant Town of Clinton (Clinton). We affirm.

I.

We summarize the following facts from the record, viewing the facts in the light most favorable to plaintiff as the non-moving party. Statewide Ins. Fund v. Star Ins. Co., 253 N.J. 119, 125 (2023). In January 2021, defendant posted a job vacancy for the full-time position of laborer with the Clinton Department of Public Works (DPW). The job posting stated, in relevant part, "[u]nder supervision, the successful applicant will perform public works tasks, including but not limited to facility maintenance . . . and any other duties assigned." The job posting stated "at a minimum" applicants were required to have a high school diploma or equivalent.

Service Master, a third-party vendor, terminated janitorial services for Clinton in April or May of 2020 because of COVID. Thereafter, DPW employees temporarily assumed the responsibility for facility maintenance services in municipal buildings. Beginning in mid-2020, Clinton posted the job vacancy for a part-time janitorial/cleaning position. That posting described,

A-0859-22

among other responsibilities, the duties as "clean[ing] and maintain[ing] several small municipal buildings." The posting also stated a high school diploma or equivalent was required.

On January 8, 2021, plaintiff saw the postings for laborer and janitor positions. Plaintiff applied for the laborer position and misrepresented that he had a high school diploma. Thereafter, on February 4, 2021, plaintiff participated in a group interview with defendant's Business Administrator Richard Phelan, the Water and Roads Division superintendent and Roads Division foreman, and the Sewer Division superintendent and foreman. At the conclusion of the interview, when asked if he had any questions, plaintiff responded: "No." Plaintiff claims Phelan did not state facility maintenance was a job responsibility. However, during his deposition, plaintiff admitted Phelan had explained that the responsibilities of the laborer position included facility maintenance and the maintenance of municipal buildings.

On February 25, 2021, Phelan called plaintiff and offered him the labor position. Phelan also informed plaintiff that the DPW needed two laborers: a laborer in Water and Roads and a laborer in Sewer. Phelan asked which position plaintiff would be interested in and plaintiff replied Water and Roads. Based on plaintiff's response, Phelan then explained that as a Water and Roads laborer,

3

plaintiff's main responsibilities would be facility cleaning and maintenance. He restated the job responsibilities, included sweeping, scrubbing, mopping, and vacuuming of municipal buildings. Plaintiff accepted the position.

A series of emails subsequently exchanged when plaintiff notified Phelan that he could commence employment on March 12, 2021, and requested a copy of the laborer job description. That day, Phelan replied and provided a start date of March 15, and attached an offer letter for the laborer position. However, in the offer letter, Phelan provided a March 25 start date. The offer letter restated the "primary responsibilities would be facility cleaning and maintenance for municipally owned buildings," and that the laborer would be "required to provide assistance with trash collection, road/signage maintenance and repair, snow removal, as well as water related issues, as needed." Phelan requested plaintiff sign and return the offer letter by March 3.

On February 25, plaintiff acknowledged receipt of the offer letter and sought clarification, stating that at the interview "there was no mention of janitorial cleaning of municipal buildings," then considered the primary job responsibility for a laborer. He told Phelan that he would be "more interested" in the laborer position because he did not apply for the posted part-time janitorial position.

A-0859-22

Phelan responded the next day and acknowledged plaintiff had applied for the laborer and not the part-time janitorial position. Phelan restated that during the interview the "clear" expectations for facility cleaning and maintenance duties were presented to all applicants. He also confirmed that plaintiff did not have any questions regarding the roles and responsibilities of the laborer position. Consequently, Phelan withdrew the employment offer for laborer. Phelan sent a letter later that day confirming the withdrawal of the employment in response to plaintiff's notification that the job responsibilities were not to his "liking."

In a reply email to Phelan, which was copied to the mayor and several council members, plaintiff expressed his disappointment with the offer letter and restated the job responsibilities were not included in the job posting or discussed during the interview. He further alleged that he believed "racism" was "a major deciding factor" after being offered a "janitor position" because "[Phelan] [did] not consider [him] worthy of the [l]aborer [p]osition in the [Water and Roads] Division of the [DPW]." Plaintiff also included both the job postings he alleges he responded to, iterating that facility maintenance was not a listed job responsibility for either laborer or part-time janitorial/cleaning positions.

A-0859-22

Following these emails, plaintiff was notified that outside counsel had been hired to conduct an investigation. Plaintiff, however, declined to participate. Instead, in March 2021, plaintiff filed a single count complaint alleging unlawful employment practices, harassment, and unlawful discrimination in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to - 50.

In July 2022, defendant moved for summary judgment. In support of its motion, defendant argued (1) plaintiff applied for the laborer position, (2) plaintiff was offered the position, and (3) plaintiff would have been required to perform the same duties as the existing DPW laborers. In opposition, plaintiff asserted that defendant's refusal to hire him was based on his race and the color of his skin. In opposition to the motion, plaintiff relied on his certification and offer letters addressed to other DPW laborers between 2013 and 2021, with at least two containing the same language regarding the primary responsibilities of facility maintenance and cleaning.

The motion judge heard oral argument. On November 9, 2022, the motion judge court granted defendant's motion and dismissed plaintiff's claim with prejudice. The judge explained the reasons for his decision on the record. The

6

judge concluded plaintiff had not met his burden of proof in establishing discrimination under the LAD. The motion judge stated:

> I can't find any weaknesses, implausibilities, inconsistencies, incoherencies[,] or contradictions in this record. Nothing . . . that was available . . . and that the plaintiff can point to during the interview process, or after the interview process, or in the way the job was presented to him. And certainly nothing in the record after the lawsuit was filed could support it. All that does is establish, corroborate that other union workers, other [l]aborers were doing this type of work on a regular basis before [plaintiff] was offered the position and obviously after he declined the position . . . . I just don't think that there is, as I said earlier, a fact issue that could be presented to a jury here.

That same day, the motion judge issued a supplemental statement of reasons. The judge found Service Master's termination of the janitorial cleaning services provided defendant with a "legitimate business reason for [its] decision to routinely assign union laborer's facility maintenance responsibilities" and other duties. The judge stated: "Those facts could well explain why both the oral and written offer provided to plaintiff underscored that, at the outset of his employment, plaintiff's primary responsibility would be facility maintenance."

Citing to the relevant case law, the motion judge restated plaintiff had not met his burden of establishing discrimination. The judge further reasoned

A-0859-22

plaintiff had failed to establish an adverse employment action. This appeal ensued.

## II.

Plaintiff challenges the motion judge's granting of defendant's summary judgment motion. Plaintiff argues racial discrimination can be established by the assignment of menial tasks that "invoke outdated stereotypes" to the African American application offered employment by Clinton. He further argues summary judgment was inappropriate because there are material facts in dispute and defendant's state of mind or intent requires determination by a jury.

We review a grant of summary judgment de novo, applying the same standard as the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"

A-0859-22

Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). We do not defer to the trial court's legal analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

To establish a prima facie case for a failure to hire under the LAD, a plaintiff must show, by a preponderance of the evidence, that he "(1) belongs to a protected class, (2) applied and was qualified for a position for which the employer was seeking applicants, (3) was rejected despite adequate qualifications, and (4) after rejection the position remained open, and the employer continued to seek applications for persons of plaintiff's qualifications." Bergen Commercial Bank v. Sisler, 157 N.J. 188, 210 (1999) (internal quotations removed) (citing Erickson v. Marsh & McLennan Co., 117 N.J. 539, 550 (1990)). Once plaintiff has established a prima facie case, a presumption of discrimination arises, and the burden then shifts to the defendant to show a "legitimate, non-discriminatory reason" for its employment action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); see also Zive v. Stanley Roberts, Inc., 182 N.J. 436, 447 (2005). A plaintiff must then show that this reason is merely a pretext for discrimination. McDonnell Douglas, 411 U.S. at 804.

9

Before us, plaintiff renews the arguments presented before the motion judge. There is no dispute that plaintiff satisfied the first prong, race, to establish a prima facie case of discrimination. Plaintiff, however, has failed to satisfy the remaining prongs. In sum, plaintiff was qualified for the laborer position but he "perceived" it as a janitorial position and as "demeaning, menial work without any upside potential." After plaintiff rejected the employment, defendant ultimately filled the janitorial position. Here, the undisputed facts establish that plaintiff had not and could not prove the three remaining elements to establish discrimination under LAD. Plaintiff was offered the position as laborer. He was not rejected; rather the offer was withdrawn after plaintiff stated that he did not want to do some of the required job functions. Moreover, the laborers were doing those job functions.

The record also establishes that defendant's decision to withdraw the offer was based on legitimate, non-discriminatory reasons. In that regard, defendant explained that after Service Master's stopped providing janitorial services it added those responsibilities to the responsibilities of a laborer. It is undisputable that defendant then explained those duties to plaintiff in both the oral and written employment offers. In response, plaintiff offered "no proof of pretext" by

A-0859-22

defendant and he did not, therefore, support his allegation of a discriminatory motive or intent.

Plaintiff also failed to present facts overcoming the presumption of non-discrimination. See Williams v. Pemberton Twp. Pub. Schs., 323 N.J. Super. 490, 503 (App. Div. 1999). The record shows plaintiff proffered a self-serving certification claiming race was a "major factor" in defendant offering a "perceived" janitorial position. That "'conclusory and self-serving assertion by [plaintiff was] insufficient to overcome' [a motion for] summary judgment." Dickson v. Cnty. Bus Lines, Inc., 458 N.J. Super. 522, 533 (App. Div. 2019) (quoting Puder v. Buechel, 183 N.J. 428, 440-41 (2005)).

Plaintiff also advanced a disparate impact claim, asserting that defendant has no black employees in the Water and Roads Division. Yet, plaintiff did not retain a statistical expert to support his disparate impact claims with scientific analysis; rather, he relied upon the U.S. Census Bureau. "Population Estimates, July 1, 2021 – Hunterdon County. Quick Facts." Thus, the record lacks any evidentiary support because those data points in isolation were insufficient to establish a prima facie case of disparate impact. See Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 657-58(1989).

11

We conclude no genuine issue of material fact exists, and those facts which are material do not constitute support for plaintiff's causes of action. Accordingly, plaintiff failed to establish a prima facie case of racial discrimination and summary judgment was correctly granted to defendant.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0859-22